[No. 23405-3-III. Division Three. September 15, 2005.]

THE STATE OF WASHINGTON, *Appellant*, v. JACQUELINE C. WALKER, *Respondent*.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for appellant.

*Gregory C. Link* (of *Washington Appellate Project*), for respondent.

¶1 KATO, C.J. — The State appeals the dismissal of the possession of a controlled substance, methamphetamine, charge against Jacqueline C. Walker following a suppression motion. The State contends the court erred by suppressing evidence of methamphetamine found during a search incident to arrest for driving with a suspended license. We affirm.

¶2 On September 20, 2003, Spokane police officer Anthony Meyer ran a registration check as Ms. Walker's car drove by him. By conducting the check, he obtained information the car was sold on May 15, 2003, but title had not been transferred. Believing he was authorized to issue a warning or a citation or make a custodial arrest for failure to transfer title, the officer stopped the vehicle to investigate the offense of failure to transfer title.

¶3 Officer Meyer approached the car and asked for Ms. Walker's license, registration, and proof of insurance. When Ms. Walker told him she did not have any of them, he asked her name and if her license was suspended. Ms. Walker gave the officer her name and acknowledged her license was indeed suspended. Officer Meyer again asked her for identification, which she then pulled out and gave it to him.

¶4 Ms. Walker was arrested for driving with a suspended license. During the search incident to her arrest, Officer Meyer looked inside her purse and discovered methamphetamine. Ms. Walker was charged with possession of a controlled substance, methamphetamine.

¶5 At the CrR 3.6 suppression hearing, the court excluded evidence of the methamphetamine because it was discovered as a result of an unlawful search and seizure. A different judge later ruled the practical effect of the order of suppression was to terminate the case, and the charge was dismissed. This appeal follows.

¶6 The State contends the court erred by granting Ms. Walker's motion to suppress. It argues Officer Meyer lawfully stopped her car to investigate the offense of failure to transfer title. As the initial stop was lawful, the State reasons that the subsequent arrest of Ms. Walker and the search incident to her arrest leading to the discovery of methamphetamine were also properly conducted.

¶7 The only issue is whether the officer could conduct a stop to investigate the misdemeanor of failure to transfer title. If the initial stop was unlawful, the subsequent search and evidence discovered during that search are inadmissible as fruits of the poisonous tree. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980)). The same corollary applies to an arrest subsequent to an unlawful stop. If an officer finds grounds for an arrest as a result of an unlawful stop, the arrest is tainted and any evidence discovered during a search incident to the arrest cannot be admitted. *State v. Ellwood*, 52 Wn. App. 70, 74, 757 P.2d 547 (1988).

¶8 Officer Meyer stopped Ms. Walker's car when he found the car was sold on May 15, 2003, but title had not been transferred as of September 20, 2003. A person operating a vehicle is seized when a police officer conducts a traffic stop. Since *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), a traffic stop is considered an investigative detention and such detention, no matter how brief, must be justified at its inception. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). Officer Meyer's only reason for the initial stop of Ms. Walker was for failure to transfer title. If a purchaser or transferee of a motor vehicle

fails "to make application to transfer the certificate of ownership and license registration within forty-five days after the date of delivery of the vehicle," she is guilty of a misdemeanor offense under RCW 46.12.101(6)(d). The initial seizure of Ms. Walker can be valid if and only if the officer had the authority to conduct a stop for violation of the title transfer statute.

¶9 RCW 10.31.100 codifies the common law warrant requirement for arrest with exceptions for permissible warrantless arrests. It provides in pertinent part:

> A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (10) of this section.

The statute authorizes a warrantless arrest for committing a misdemeanor "only when the offense is committed in the presence of the officer," subject to the exceptions provided in the statute. Failure to transfer title does not appear in the statutory exemptions from the warrant requirement for arrest under RCW 10.31.100. Therefore, without a warrant, the seizure of Ms. Walker for failure to transfer title was lawful only if the offense was committed in officer Meyer's presence.

¶10 In *State v. Green*, 150 Wn.2d 740, 82 P.3d 239 (2004), the Washington Supreme Court held that the misdemeanor of failure to transfer title under RCW 46-.12.101(6)(d) was not an ongoing misdemeanor offense because it is committed only when 45 days have passed since the date of delivery of the vehicle and is completed at that point. *Id.* at 744. Consequently, the court held that deputies lacked the authority to arrest the defendant for the misdemeanor of failure to transfer title as it was not committed in their presence and thus suppressed evidence of cocaine discovered during the search incident to her arrest. *Id.* As in *Green*, the warrantless seizure of Ms. Walker here was unlawful because the misdemeanor offense of failure to transfer title was not committed in Officer Meyer's presence.

¶11 The State nonetheless argues the court should have limited the application of *Green* because it dealt only with construction of the failure to transfer title statute and an investigative stop of a vehicle for failure to transfer title is instead governed by *Kennedy*. There, the Washington Supreme Court held a traffic stop was lawful under the *Terry* standard if the investigating officer had " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Kennedy,* 107 Wn.2d at 5 (quoting *Terry*, 392 U.S. at 21). It also noted that a stop, although less intrusive than an arrest, was a seizure and thus must be reasonable under the circumstances. *Id.* at 4.

¶12 The problem with applying the *Terry* stop standard here is that the misdemeanor of failure to transfer title is not one of the offenses an officer can investigate. There was simply nothing to investigate. Before stopping Ms. Walker's car, Officer Meyer was already aware the car had been sold more than four months earlier and title to it had not been transferred. This knowledge eliminated the possibility the officer stopped the car to investigate the offense.

¶13 Moreover, *Green* established the proposition that the failure to transfer title is not a misdemeanor committed in the presence of the officer. If it is not an ongoing offense, the officer can neither arrest nor cite and release the operator of the vehicle because the same authority of law required for making an arrest for a misdemeanor offense applies to the detention for the issuance of a citation.

¶14 RCW 46.64.015 provides authority for a police officer to issue a citation for a violation of traffic laws. But it states "[a]n officer may not serve or issue any traffic citation or notice for any offense or violation except either when the offense or violation is committed in his or her presence or when a person may be arrested pursuant to RCW 10-.31.100." The misdemeanor of failure to transfer title meets neither of the exceptions in RCW 46.64.015.

¶15 Because Officer Meyer did not have the authority to make an arrest or issue a citation for failure to transfer title, an investigative *Terry* stop cannot be justified under these circumstances.

¶16 There was no crime afoot to justify the detention. Officer Meyer lacked the authority to conduct a traffic stop of Ms. Walker's vehicle for failure to transfer title. Since the initial stop was unlawful, the subsequent arrest of Ms. Walker for driving with a suspended license and the search incident to her arrest were tainted by the unlawful stop. Evidence of methamphetamine, as fruit of the poisonous tree, must be excluded.

¶17 Affirmed.

SCHULTHEIS, J., concurs.

¶18 BROWN, J. (dissenting) — An investigative stop was permitted here under *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986), because Officer Anthony Meyer articulated reasonable suspicion to believe Jacqueline C. Walker was involved in a title transfer crime. *See also State v. Belieu*, 112 Wn.2d 587, 594, 773 P.2d 46 (1989) (finding certain investigative stops to be permitted under the Fourth Amendment without probable cause to support a full arrest). Although this investigative stop was a seizure, it was not, under our facts, a full arrest.

¶19 While this title transfer crime would have been a misdemeanor not committed in officer Meyer's presence, which would preclude an arrest without a warrant, the facts show Officer Meyer did not arrest Ms. Walker for a title transfer crime. Instead, she was arrested for driving with a suspended license, a separate matter that surfaced during his investigative stop. The search incident to the ensuing arrest for driving with suspended license was lawful. Thus, Ms. Walker's emphasis on *State v. Green*, 150 Wn.2d 740, 82 P.3d 239 (2004), is misplaced. Further, no issue of pretext is presented in our facts. Therefore, *State v. Ladson*, 138 Wn.2d 343, 979 P.2d 833 (1999), has no application here.

¶20 Given the above, the trial court erred in granting suppression. I would reverse. Accordingly, I respectfully dissent.

Review denied at 156 Wn.2d 1036 (2006).