[No. 3355–4–III. Division Three. June 5, 1980.]

THE CITY OF YAKIMA, *Respondent,* v. GEORGE L. ESQUEDA, *Appellant.*

*J. Adam Moore* and *Dobbs, Moore & Kirkevold,* for appellant.

*Fred Andrews, City Attorney,* and *Robert Bounds, Assistant,* for respondent.

ROE, J.—Defendant Esqueda is an avowed transsexual. He feels he is a woman trapped in a man's body. This is diagnosed as gender dysphoria. His hope is for a surgical procedure to change sex. In preparation for this reformation, he was advised by the doctors who would possibly operate that he should live at least 1 year as a female, in woman's attire and activity. In harmony with that, he obtained a job as a "cocktail waitress" at the Corral, a local bar. He dressed and passed as a woman.

While working, defendant would sit and talk with customers encouraging them to buy drinks, because the waitresses were paid $2 for each swizzle stick they returned on a $3 drink. One evening, defendant was engaged in such activity with a police undercover agent. The conversation took a not unaccustomed turn and the court made a finding, supported in the record, that defendant agreed to meet the undercover agent after work at 2:30 a.m. and to engage in "straight sex" until 9 a.m. for $150.

Defendant was convicted of agreeing to engage in prosti-

tution, which is a violation of Yakima City Ordinance No. 1784, § 1 (1975).[1]

His defense is that since he was physically incapable of engaging in straight sex with the undercover policeman, he never intended to fulfill the agreement. Thus, he argues, there was no binding agreement and he could not be convicted for a violation of the ordinance. He also claims the ordinance is vague for indefiniteness and is overbroad.

The latter contention has been foreclosed by the cases of *State v. Zuanich,* 92 Wn.2d 61, 63, 593 P.2d 1314 (1979); *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975); and *Yakima v. Emmons,* 25 Wn. App. 798, 609 P.2d 973 (1980). The ordinance is constitutional.

Defendant was not convicted of engaging in prostitution, so we need not decide whether he would have had a valid defense under these circumstances. We find nothing objectionable in making it a crime to *agree* to engage in an act of sexual conduct even though one of the parties may be physically incapable or mentally indisposed to fulfill the agreement. Conceivably, a normally endowed prostitute might agree to an act of prostitution in order to lure a man into her room for the purpose of robbery or to be assaulted by friends, with no intention whatsoever of fulfilling the agreement. The law may proscribe the making of such an agreement.

In *Seattle v. Ross,* 77 Wn.2d 797, 467 P.2d 177 (1970), it was held that words alone are sufficient. In interpreting the ordinance of the City of Seattle, which stated, "'It shall be unlawful to commit or offer or agree to commit any act of prostitution . . .'", it was held that "the mere act of offering to engage in sexual intercourse for a consideration is a violation of law. No overt act is required to complete the

---

[1]Yakima City Ordinance No. 1784, § 1 (1975):

"Prostitution. It is unlawful for any person to engage in, or to offer or agree to engage in, sexual conduct with any person in return for a fee." Yakima City Code 6.04.381.

offense.'" *Seattle v. Ross, supra* at 798, citing *Pauline v. Lee,* 147 So. 2d 359, 362 (Fla. Dist. Ct. App. 1962). For example, under RCW 9A.68.010(2) it is no defense to a prosecution for bribery "that the public servant sought to be influenced was not qualified to act in the desired way, whether because he had not yet assumed office, lacked jurisdiction, or for any other reason."

In "bunco" games the perpetrators are held criminally liable even when there is no intent that the agreement ever be completed or that the terms of the agreement be fulfilled. *See* Annot., *Appropriation of property after obtaining possession by fraud as larceny,* 26 A.L.R. 381 (1923); Annot., *Attempts to commit offenses of larceny by trick, confidence game, false pretenses, and the like,* 6 A.L.R.3d 241 (1966).

In consumer protection law, "bait and switch" practices are proscribed. Thus, it is illegal for a retailer to advertise a product at a low price when he never intends to fulfill such a sale, but rather to use the offer as bait to draw customers to the store to buy higher–priced merchandise. The mere offer with such intent constitutes such illegality. *See Tashof v. Federal Trade Comm'n,* 437 F.2d 707 (D.C. Cir. 1970).

The defendant had a commercial purpose in engaging in such an agreement since his remuneration from the cocktail lounge for the evening depended solely upon his selling drinks. His economic benefit in capturing and retaining the interest of a potential sexual customer would lead the defendant to make such an agreement so that his anticipated customer would be more likely to buy drinks which would benefit this putative prostitute. Immunity should not extend to the male defendant because he was unable to fulfill the agreement, any more than it should extend to a woman who is able but had no intention of doing so.

The offer and acceptance here were not made in jest, nor as part of table talk. There was a purpose and an intent that the offer be relied upon so that more drinks would be purchased. The undercover officer believed this was a bona

fide proposition. This ordinance should apply equally to men as well as women. There should be no immunity from prosecution because of deception.

Judgment is affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.