[Nos. 60674-9; 60675-7.   En Banc.   April 7, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. PAMELA D. WALSH, ET AL, *Petitioners*.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES OSBORN, *Petitioner*.

742

*William R. Michelman*, for petitioners Walsh and Reeves.
*Mayhew-Froehling* and *Antoni H. Froehling*, for petitioner Osborn.

*Patrick D. Sutherland, Prosecuting Attorney for Thurston County*, and *George A. Steele, Deputy; John W. Ladenburg, Prosecuting Attorney for Pierce County*, and *James B. Roche* and *Kathleen F. Oliver, Deputies*, for respondent.

GUY, J. — In 1947, the Legislature passed the present Game Code of the State of Washington which reorganized the Department of Game and the State Game Commission.[1] Laws of 1947, ch. 275. This comprehensive regulation of the state's wildlife devoted an entire chapter to prohibited acts and penalties. Among its many provisions, the game code outlawed hunting while intoxicated; using dogs of any kind to hunt deer or elk; constructing dams or other obstructions across any river or stream which inhibit the free passage of all game fish; and, the subject of this appeal, using artificial light after sunset to hunt deer and other big game. This is commonly known as "spotlighting".

Under RCW 77.16.050 (the "spotlighting statute"),

[i]t is unlawful to hunt big game with a spotlight or other artificial light. It is prima facie evidence of a violation of this

---

[1]Washington's first game code dates to 1913. *See* Rem. 1915 Code §§ 5395-1 to -55. In 1932, the people adopted Initiative 62 which required a State Game Commission to investigate the geographic, climatic, and biological conditions of the state and then to consolidate control of the state's wildlife in one state agency. Previously, each county had regulated the wildlife within its borders.

section to be found with a spotlight or other artificial light and with a firearm, bow and arrow, or crossbow, after sunset, in a place where big game may reasonably be expected.

The Department of Wildlife often attempts to enforce the spotlighting statute by planting a styrofoam deer at sunset in a field by the side of a rural road. When cars drive by the decoy at night, their headlights illuminate the decoy's reflective eyes.

Defendants in these two consolidated appeals allegedly either aimed at the decoy (Osborn), or shot it (Walsh). At trial, the two District Courts dismissed the charges against Defendants, ruling the use of the decoy made it impossible for Defendants to commit the crime of spotlighting. On appeal, the respective Superior Courts reversed and remanded the cases for trial, holding the State had presented evidence sufficient to prove illegal spotlighting. Defendants now appeal, claiming because it is impossible to hunt a decoy deer, the charges against them for spotlighting big game should be dismissed.

### BACKGROUND

#### Defendants Walsh and Reeves

The State presented the following evidence at trial: On November 16, 1990, Defendant Reeves and Defendant Walsh were riding in an automobile down a gravel road in southern Thurston County. It was approximately 6 p.m., an hour after sunset, and they were in an area known to attract deer. As their automobile turned onto Johnson Creek Road, out of the darkness appeared two eyes shining in their car's headlights. Defendant Reeves, who was driving, immediately stopped the car, reversed it, and aimed the headlights where he had first seen the eyes illuminated. He turned off the motor and Defendant Walsh got out of the car with a rifle.

Not far away waited Department of Wildlife agents Mann and Furrer seated in their patrol car, listening for sounds of game poachers at work. This was not an unwarranted expectation or accidental surveillance, for earlier in the day the agents had placed this antlered, decoy deer,

complete with reflective eyes, in the clearcut. Defendant Walsh fired her rifle at the decoy, nicking its right ear but not otherwise imperiling the lifeless replica. This action by Defendant Walsh was observed by the agents and admitted to by Defendant Walsh.

Recognizing the ruse, Defendants Reeves and Walsh began to drive out of the area when they were stopped by the Department of Wildlife agents and read their *Miranda* rights. The agents found a .243-caliber hunting rifle in the automobile and a spent shell on the roadway matching the caliber of that rifle. Defendant Walsh, when asked what she thought she had shot at that night, answered "a two point buck". She recognized it was a decoy immediately after taking her shot.

### Defendant Osborn

On October 20, 1990, Agent Neal from the Department of Wildlife and Sergeant Predmore from the Buckley Police Department watched as Defendant Osborn stopped his automobile on Forest Service Road 194 near Sunset Lake in Pierce County. The time was approximately 7:25 p.m., after sunset, and the area was known to contain deer. Agent Neal and Sergeant Predmore were observing this area because earlier that day they had set up a decoy deer in an open area. While so observing, Agent Neal and Sergeant Predmore saw Defendant Osborn first drive by the decoy, stop his automobile, put it in reverse, and then aim the automobile's headlights so as to pick up the reflective eyes of the decoy. Defendant Osborn then exited his automobile, stood on the driver's side in front of the windshield and brought his rifle to his shoulder, sighting the decoy through the rifle's scope. Osborn was then observed bringing the rifle down, pausing, and sighting again. Ultimately, Osborn put the rifle down and threw a rock at the decoy. Agent Neal, through hand signals, motioned to Sergeant Predmore to pull the decoy down with the line attached to it. However, the decoy snagged on a stump and, in Agent Neal's words, "looked real fake at that time".

Defendant Osborn then returned to his automobile and started the engine. Agent Neal and Sergeant Predmore arrived in their patrol car, signaling with blue lights for Defendant Osborn to stop. Agent Neal recognized Defendant Osborn as Officer James Osborn, a member of the Buckley Police Department. Agent Neal also found a high-powered rifle with a scope sitting on the front seat of Defendant Osborn's automobile.

A day or two later, Defendant Osborn allegedly joked to other members of the Buckley Police Department he had almost shot the game department deer, and for a moment it looked like a real deer. However, the testimony at trial conflicted over whether Defendant Osborn had loaded his gun and had intended to shoot the decoy, believing it to be a live deer.

All Defendants were charged with spotlighting in violation of RCW 77.16.050. The Defendants went to trial in their respective District Courts, and in both cases the District Courts dismissed the charges before reaching a verdict. In Defendants Reeves' and Walsh's case, the district judge ruled in favor of Defendants' impossibility defense, stating:

> Given the facts of this case, I find that it is factually impossible for the defendants to have killed big game in violation of RCW 77.16.050. If it was factually impossible for the Defendants to have killed big game, then it was just as factually impossible for defendants to have hunted big game or to have made an "effort" to kill big game. I reference RCW 77.08.010(7) wherein the term "[t]o hunt" is defined as an "effort to kill, injure, capture or harass [a] wild animal or wild bird."

Clerk's Papers, at 12. The District Court, while dismissing the citation against Defendants Reeves and Walsh, also granted the prosecutor leave to charge Defendants with attempted spotlighting.

The district judge in Defendant Osborn's trial dismissed the charge against Osborn at the close of the prosecutor's case, finding:

> I can't see how we can say that this is an effort to hunt. That's how the statute reads. An effort to kill — actually, not to hunt, an effort to kill, injure, capture, or harass a wild animal or

wild bird. I don't see how we can say that what we have heard today — there was no wild animal involved in any of this.

*Unofficial Transcript of Jury Trial*, at 142.

On appeal to the respective county Superior Courts, the State won reversal of the dismissals, with the Superior Courts rejecting Defendants' impossibility defenses. The courts ruled because the State presented sufficient evidence of Defendants' intent to hunt big game, the fact Defendants actually hunted a decoy was not grounds for dismissal. Both cases were remanded for trial.

## ISSUES

The primary issue is whether the defense of impossibility applies to the crime of spotlighting big game under RCW 77.16.050. Defendant Osborn also attacks RCW 77.16.050 as being unconstitutionally vague and unconstitutionally overbroad.

## ANALYSIS

### Impossibility

Traditionally, legal impossibility was a defense to criminal charges of attempt while factual impossibility was not. The distinction between the two proved extremely elusive, though, and the Model Penal Code, as well as most courts, no longer recognize impossibility as a valid defense to crimes of attempt. *See State v. Davidson*, 20 Wn. App. 893, 584 P.2d 401 (1978) (legal impossibility defense greatly eroded), *review denied*, 91 Wn.2d 1011 (1979). Instead, the courts aim their telescopic sights at whether a defendant completed the crime charged regardless of the impossibility, or whether the defendant committed an attempt. *Compare Yakima v. Esqueda*, 26 Wn. App. 347, 612 P.2d 821 (1980) (completed crime) *with Davidson*, 20 Wn. App. at 897-98 (attempt).

█ We begin our analysis with the plain words of the spotlighting statute. They are straightforward — the statute requires proof of three elements: (1) hunting, (2) big game, and (3) artificial light. RCW 77.08.010(7) defines the first element, " '[t]o hunt' ", as "an effort to kill, injure, cap-

ture, or harass a wild animal or wild bird." Next, RCW 77.08.030 defines "big game", the second element, as elk, blacktail deer, whitetail deer, moose, mountain goat, caribou, mountain sheep, pronghorn antelope, cougar, black bear, or grizzly bear. Finally, as agreed, "artificial light" includes a car's headlights.

Defendants argue they sighted a deer decoy in their rifles, not big game and, therefore, the State failed to prove at trial Defendants hunted big game. Instead, according to Defendants, the State proved they hunted styrofoam, an act which is not illegal. Defendants conclude the existence of the decoy made it impossible for Defendants to complete the crime of spotlighting.

■■ This argument camouflages an incorrect assumption: that to hunt big game, defendants must actually encounter big game. Hunting, however, is an activity involving effort. From 1947 to the present, the Legislature has defined hunting as "an *effort* to kill [or] injure" a wild animal or wild bird. (Italics ours.) RCW 77.08.010(7). Every fall, thousands of Washington residents journey deep into the woods in search of game. To say that they do not hunt until they actually encounter game defines the activity far too narrowly. Like hunting, when we take rod and reel to a mountain lake and dip our line in its waters, we begin to fish. Effort defines these activities.

Hunters begin to "hunt big game" not when they actually encounter big game, but rather when they make an effort to kill or injure big game in an area where such animals may reasonably be expected. The spotlighting statute outlaws making this effort with the aid of artificial light. We find, therefore, the State presented evidence sufficient to show Defendants completed the crime of spotlighting. When Defendants allegedly took aim at the decoy in their headlights, believing it to be a deer, they hunted big game with artificial light. Whether a defendant fires a shot may be evidence of intent, but it is not essential to prosecuting the charge.

The Court of Appeals in *Yakima v. Esqueda, supra,* reached a similar result. Defendant Esqueda was an avowed trans-

sexual who worked as a cocktail waitress at "the Corral", a local bar. Esqueda, dressed as a woman, agreed to engage in straight sex with an undercover policeman for $150. Esqueda was charged and convicted with agreeing to engage in prostitution. The Court of Appeals, in upholding the conviction, ruled the prosecution proved both intent and the prohibited conduct, *i.e.*, the agreement; and, therefore, the ability of either party to follow through was irrelevant. *Esqueda*, 26 Wn. App. at 349. The crime was complete at the point of agreement.

We therefore affirm the Superior Courts' rulings. The Superior Courts held correctly the cases against Defendants Reeves, Walsh and Osborn should have gone to the trier of fact.

## Vagueness

■■ Defendant Osborn contends the spotlighting statute does not draw a clear line between innocent and criminal behavior and thus is unconstitutionally vague. Defendant Osborn argues the police could use the statute to charge anyone who drives at night with an unloaded firearm through an area populated with deer. The spotlighting statute does not implicate First Amendment rights. Therefore, the court evaluates the vagueness statute "in light of how the statute has been applied in [Defendants'] individual cases." *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). No charges were placed against the Defendant for spotlighting until he allegedly aimed his headlights at the decoy, exited the automobile and sighted his rifle. The statute requires evidence of hunting, a requirement which both defines the statute sufficiently so that "ordinary people can understand what conduct is proscribed" and provides "ascertainable standards of guilt to protect against arbitrary enforcement". *Coria*, at 163. The Defendant's challenge to vagueness is without merit.

## Overbreadth

■■ Defendant Osborn argues that the spotlighting statute infringes impermissibly on his Second Amendment

right to bear arms and is therefore unconstitutionally over-broad. Because the spotlighting statute regulates behavior, not speech, we will not overturn it unless the overbreadth is both real and substantial in relation to the ordinance's plainly legitimate sweep. *Seattle v. Webster*, 115 Wn.2d 635, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990), *cert. denied*, 114 L. Ed. 2d 85 (1991).

We find the spotlighting statute does not excessively burden Defendant's right to bear arms and is rather a reasonable regulation of conduct under the State's police power. Defendant's argument is without merit.

CONCLUSION

The Superior Courts for Pierce and Thurston Counties are affirmed, and the cases are remanded to the trial District Courts.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.