# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF KENT, | ) | No. 75505-6-I |
| | ) | (Consolidated with |
| Respondent, | ) | No. 75511-1-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| VINCENT LLOYD FEASTER; and | ) | |
| JUNZHI SHAO, | ) | UNPUBLISHED |
| | ) | |
| Appellants. | ) | FILED: February 12, 2018 |
| | ) | |

Cox, J. — Vincent Feaster and Junzhi Shao were each convicted in the municipal court of the City of Kent of patronizing a prostitute. We granted discretionary review of their claims that the court lacked jurisdiction to prosecute them for these crimes. Concluding that such jurisdiction exists, we affirm.

The material facts are undisputed. The City of Kent police department conducted a sting operation by an undercover officer and others. Feaster and Shao responded to an on-line advertisement for sexual services in Kent. Feaster called the phone number listed in the advertisement and Shao texted that number. An undercover officer located in Kent responded, and both men made arrangements with that officer to pay money for sexual services in Kent. When

Feaster and Shao each arrived at the motel in Kent where the services were to be performed, police arrested them.

The City of Kent charged them separately in municipal court with patronizing a prostitute pursuant to RCW 9A.88.110(b) and Kent City Code (KCC) 9.02.070. Feaster and Shao each moved to dismiss, arguing that jurisdiction was improper because there was no evidence that they were in Kent when they agreed to pay for the agreed sexual services. The court denied their motions.

Shao's case was tried to a jury. Feaster's case was tried to the court based on a stipulated record.

Both men were found guilty and given 18-month deferred sentences. They appealed to superior court and the RALJ court affirmed.

We granted discretionary review of the RALJ court's decision solely on the jurisdictional question.

## JURISDICTION

Feaster and Shao argue that there is insufficient evidence to support their convictions for patronizing a prostitute. They specifically claim that there is no evidence that they committed the crime in Kent. Based upon this alleged lack of evidence, Feaster and Shao claim that the municipal court did not have jurisdiction to prosecute them. We disagree.

Due process requires the State to prove, beyond a reasonable doubt, every element of the crime charged.[1] This court "will reverse a conviction for insufficient evidence only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt."[2] We accept factual determinations that are supported by substantial evidence in the record if those determinations were either expressly made by the lower court or may be reasonably inferred from the lower court's judgment.[3]

Washington statute confers criminal jurisdiction over: "[a] person who commits in the state any crime, in whole or *in part*."[4] "An offense is committed 'in part' in Washington, within the contemplation of the criminal jurisdiction statute, when an 'essential element' of the offense has been committed here."[5]

As a court of limited jurisdiction, the City of Kent municipal court may only exercise the jurisdiction granted it by the legislature.[6] The municipal court is statutorily authorized to prosecute misdemeanor and gross misdemeanor

---

[1] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[2] State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005).

[3] RALJ 9.1(b).

[4] RCW 9A.04.030(1) (emphasis added).

[5] State v. Lane, 112 Wn.2d 464, 471, 771 P.2d 1150 (1989) (quoting State v. Swanson, 16 Wn. App. 179, 190, 554 P.2d 364 (1976)).

[6] CONST. art. IV, § 12; City of Spokane v. Marquette, 146 Wn.2d 124, 129, 43 P.3d 502 (2002); Lane, 112 Wn.2d at 470-71.

offenses committed within its jurisdiction.[7] Patronizing a prostitute is a misdemeanor.[8] So the City of Kent may prosecute that crime as long as it was committed within the City "in whole or in part."[9] Thus, at least one essential element of the crime must have been committed in Kent.[10]

We review de novo whether a municipal court has jurisdiction.[11]

The patronizing a prostitute statute under which these men were prosecuted in 2014 provided in part that "[a] person is guilty of patronizing a prostitute if [h]e . . . pays or agrees to pay a fee to another person pursuant to an understanding that in return therefor such person will engage in sexual conduct with him or her."[12]

There is no evidence that either Feaster or Shao were in Kent when they called the undercover officer. They argue that only their intent and their understanding are elements of the crime of patronizing a prostitute. Thus, they claim there is no evidence that any essential element of the crime occurred in Kent. They contend that because there need not be an understanding or "meeting of the minds," between them and the undercover officer, any action by, or intention of, the undercover officer is irrelevant. They miss the essential point:

---

[7] RCW 39.34.180(1).

[8] RCW 9A.88.110(3).

[9] RCW 9A.04.030(1); KCC 9.02.070.

[10] Lane, 112 Wn.2d at 471.

[11] Marquette, 146 Wn.2d at 129.

[12] Former RCW 9A.88.110(1)(b); KCC 9.02.070.

whether any essential element of the crime was committed within the City of Kent.

Essential elements of the charged crime are committed when one "agrees" to pay a fee pursuant to "an understanding" that sexual conduct will be given in return.[13] At the time of the prosecution, the patronizing a prostitute statute did not define "agrees" or "understanding." Thus, we may look to the dictionary for definitions of the ordinary meanings of these terms for the purpose of determining legislative intent.[14]

*The American Heritage Dictionary* defines "understanding" as "[a] compact implicit between *two* or more people or groups" and "a state of agreement."[15] It defines "agreement" as "[h]armony of opinion; accord" and "[a]n arrangement between *parties* regarding a method of action."[16]

These definitions show that both an understanding and an agreement require two or more persons. Thus, in order to reach an agreement or an "understanding," Feaster and Shao necessarily had to interact with the undercover officer. Both men dealt by mobile phone with the undercover officer, who was in Kent. This was sufficient evidence that essential elements of the crime were committed in Kent.

---

[13] Id.

[14] State v. Belgarde, 119 Wn.2d 711, 716, 837 P.2d 599 (1992).

[15] THE AMERICAN HERITAGE DICTIONARY 1948 (3rd ed. 1992).

[16] Id. at 36 (emphasis added).

We note that the objective manifestation of their agreement and understanding was their appearances at the motel in Kent following their respective communications with the undercover officer. No other view of the facts makes sense.

Feaster and Shao rely on City of Yakima v. Esqueda,[17] as support for their contention that, because only their intent matters, no part of the crime was committed in Kent. Such reliance is misplaced.

In Esqueda, the court affirmed George Esqueda's conviction for agreeing to engage in prostitution even though he never intended to fulfill the agreement.[18] Esqueda held himself out as a woman and agreed to have sex with a male undercover officer.[19] Esqueda worked in a bar and was paid based on how many drinks customers purchased.[20] He did not intend to have sex but promised to do so in an attempt to get the officer to buy more drinks.[21] The court affirmed the conviction based on the interaction between Esqueda and the officer and the officer's belief that it was a bona fide proposition.[22] It was Esqueda's intent that was irrelevant, not the officer's.[23]

---

[17] 26 Wn. App. 347, 612 P.2d 821 (1980).

[18] Id. at 349.

[19] Id.

[20] Id. at 348-49.

[21] Id. at 349.

[22] Id. at 350-51.

[23] Id.

Here, as in <u>Esqueda</u>, Feaster and Shao agreed with the undercover officer to pay a fee pursuant to an understanding that sexual conduct would follow. It is irrelevant whether the undercover officer, even though a party, intended to carry through with the agreement. As in <u>Esqueda</u>, the parties did enter into an agreement with the requisite understanding. At a similar point in these cases, Feaster and Shao committed the crime of patronizing a prostitute.[24]

Feaster and Shao also argue that only their intent and actions can be relevant because any guilt based on the "understanding" of the other party could result in liability even if the defendant never intended to commit a crime. For example if a defendant mistakenly called a wrong number and made an agreement for services not knowing they were agreeing to sexual services. This argument is not convincing.

Any such mistake would negate the essential element of an understanding. That element requires both parties to agree to payment pursuant to an understanding that sexual conduct will be given in return.[25]

The importance of that understanding is illustrated by the legislative history of the patronizing a prostitute statute. In <u>State v. Wilbur</u>, the supreme court held that the state statute making prostitution a crime did not apply to an agreement to pay for sex.[26] James Wilbur had agreed to pay an undercover

---

[24] <u>Id.</u> at 350.

[25] RCW 9A.88.110(1)(b).

[26] 110 Wn.2d 16, 18, 749 P.2d 1295 (1988).

officer for sex but he was arrested before any sexual activity occurred or money changed hands.[27]

On appeal, the court held that Wilbur's actions did not fall within the definition of the crime of prostitution because the state statute "d[id] not make it a crime for a person to agree to pay money to a police decoy for sex."[28]  At that time, a Snohomish County ordinance made patronizing a prostitute a crime, but Wilbur had not been prosecuted for violation of that ordinance.[29]  The legislature adopted the patronizing a prostitute statute with language identical to that in the county ordinance shortly after the Wilbur decision.[30]  Doing so suggests that the legislature intended to punish persons like Wilbur, Feaster, and Shao who enter into an agreement to pay for sexual conduct but are arrested before any such crime is committed.

## STATUTORY AUTHORITY

Feaster and Shao also argue that jurisdiction is absent because "there is no statute, court rule, or common law" that extends jurisdiction to the location where the communication was received versus where it is made.  This is also unpersuasive.

---

[27] Id. at 17.

[28] Id. at 18.

[29] Id. at 17 n.2, 3.

[30] RCW 9A.88.110, 1988 ch. 146 § 4; see 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 48.10 (comments) (WPIC); Wilbur, 110 Wn.2d at 17 n.2, 3.

"In construing a statute, this court's primary goal is to ascertain and give effect to the legislative intent."[31] We review de novo questions of statutory interpretation.[32]

Feaster and Shao argue that jurisdiction does not extend to where the communication was received because the patronizing a prostitute statute does not explicitly so state. They appear to argue that this absence of specificity is material because the legislature has enacted other criminal statutes involving communication that extend jurisdiction to where the communication is received. Such statutes include telephone harassment,[33] cyberstalking,[34] harassment,[35] stalking,[36] and violation of anti-harassment, protection, and no-contact orders by an out-of-state defendant when the victim is in-state.[37] Feaster and Shao argue that, if the legislature intended to extend jurisdiction to include the location where the communication was received, it would have done so in the statute. They are wrong.

---

[31] Ravenscroft v. Washington Water Power Co., 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998) (internal citations omitted).

[32] State v. Veliz, 176 Wn.2d 849, 853-54, 298 P.3d 75 (2013) (quoting State v. Morales, 173 Wn.2d 560, 567 n.3, 269 P.3d 263 (2012)).

[33] RCW 9.61.230; RCW 9.61.250.

[34] RCW 9.61.260.

[35] RCW 9A.46.020; RCW 9A 46.030.

[36] RCW 9A.46.030; RCW 9A.46.110.

[37] See RCW 26.50.240.

First, as Feaster and Shao acknowledge, Washington courts have previously held that jurisdiction is proper where a communication is made or received in cases involving crimes that did not include a jurisdictional provision. For example, State v. Dent involved conspiracy to commit first degree murder.[38] The court held that communication by telephone call was deemed to occur both where the call was placed and where it was received.[39] Neither the conspiracy statute nor the first degree murder statute included a jurisdictional provision directed at communication.[40] Yet, jurisdiction was not in question.

Also, in State v. Bogart, jurisdiction was proper in Yakima County to prosecute Oran Bogart for contributing to the delinquency of a minor even though Bogart was never physically present there.[41] It was enough that Bogart sent a letter to a juvenile in Yakima County that caused that juvenile to become delinquent.[42] In Bogart, the applicable criminal statute did not contain a jurisdictional provision.[43]

The decisions in Dent and Bogart show that express statements of jurisdictional language are not necessary to show that jurisdiction exists. The patronizing a prostitute statute under which these prosecutions occurred, similar

---

[38] 123 Wn.2d 467, 470, 869 P.2d 392 (1994).

[39] Id. at 481.

[40] See RCW 9A.28.040; RCW 9A.32.030.

[41] 21 Wn.2d 765, 770-71, 153 P.2d 507 (1944).

[42] Id.

[43] See id. at 770 (citing former RCW 13.04.170).

10

to the conspiracy statute at issue in <u>Dent</u>, includes an understanding or agreement as an essential element of the crime.[44] This is sufficient for jurisdictional purposes.

Feaster and Shao argue that the ruling in <u>Dent</u> cannot apply to all statutes involving communication because otherwise the jurisdictional provision in some statutes would be obsolete. Whether this ruling applies to all statutes is irrelevant. It clearly applies to this one.

Feaster and Shao also cite to statutes that do not even involve communication. For example, the forgery and identity theft statutes provide that jurisdiction is proper in the place where the victim resides even if the defendant has never been physically present there.[45] But these crimes do not involve any communication, much less an agreement or understanding.[46] They are not helpful to deciding this issue.

Likewise, Feaster and Shao cite to RCW 10.66.120, arguing that it "establishes jurisdiction for drug trafficking in any county in which any element of the alleged drug trafficking activities occurred."[47] This is another statute that does not pertain to communication or an understanding. For this reason, it is not helpful to deciding this issue.

---

[44] See <u>Dent</u>, 123 Wn.2d at 474.

[45] See <u>e.g.</u>, RCW 9.35.020(8); RCW 9A.60.20(2).

[46] <u>Id.</u>

[47] Appellants' Opening Brief at 14.

Finally, because Feaster and Shao have failed to show that a lack of a jurisdictional provision renders the patronizing a prostitute statute ambiguous, the rule of lenity does not apply.[48]

Feaster and Shao also argue that WPIC 4.27 supports their contention that the patronizing a prostitute statute does not extend jurisdiction to where the communication was received. We again disagree.

WPIC 4.27 reads in part: "A person who sends a [letter] [electronic message] [telegram] [fax] is considered to have performed the act both where the [letter] [electronic message] [telegram] [fax] originates and where the [letter] [electronic message] [telegram] [fax] is received." It also provides that "[a] person who telephones another person is considered to have performed the act both where the call is placed or dialed and where the call is received."[49]

Although WPICs are not law, they are persuasive authority.[50] Feaster and Shao claim that WPIC 4.27 was drafted to inform juries of the jurisdiction statutes, and thus is only applicable to those crimes.[51] They focus on the language in the comments recognizing that:

> [m]any crimes—including violations of protective orders, communication with a minor, and harassment—are based upon a communication between the defendant and another person. Threats and other statements may be communicated by mail, [or] over the telephone. . . . In these cases, determining whether a

---

[48] Id. at 18 (citing State v. Welty, 44 Wn. App. 281, 283, 726 P.2d 472 (1986)).

[49] WPIC 4.27.

[50] State v. Hayward, 152 Wn. App. 632, 645, 217 P.3d 354 (2009).

[51] Appellants' Opening Brief at 16.

12

court has jurisdiction requires the application of certain statutes, court rules, and common law principles to the facts presented to the jury.[52]

But the comments specifically state that determining jurisdiction requires application of "common law principles."[53] While the comments cite to various statutes that contain jurisdictional provisions, they also cite to both Dent and Bogart in discussing case law relevant to the use of WPIC 4.27.[54]

WPIC 4.27 does not conflict with the patronizing a prostitute statute at issue in this case even though the latter does not contain a jurisdictional provision directed at the communication that leads to the agreement or understanding.[55] Instead, WPIC 4.27 serves to supplement the to-convict instruction for patronizing a prostitute found at WPIC 48.10, and its use in these circumstances is consistent with the common law principles set forth in Dent and Bogart.

In sum, neither the jurisdictional provisions in other statutes nor the language of WPIC 4.27 support Feaster and Shao's contention that jurisdiction is limited to the location where the communication was initiated.

---

[52] Id. (quoting WPIC 4.27 (comments)).

[53] WPIC 4.27 (comment).

[54] Id. (citing Dent, 123 Wn.2d 467 and Bogart, 21 Wn.2d 765).

[55] See Hayward, 152 Wn. App. at 646.

## JURY INSTRUCTION

Shao argues that the municipal court erred in instructing the jury pursuant to WPIC 4.27. He claims that the instruction improperly extended Kent's jurisdiction without any statutory authority to do so. We disagree.

"Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." [56]

We review de novo whether a jury instruction reflects an accurate statement of the law. [57]

Jurisdictional questions may involve issues of law for the courts to determine as well as issues of fact for the jury to decide. [58] Even if the court rules on questions of law before trial, the prosecution has the burden of proving jurisdiction at trial beyond a reasonable doubt, and the jury must be instructed accordingly. [59] Thus, jury instructions must include jurisdiction as an essential element that the prosecution must prove. [60]

Here, the municipal court concluded for purposes of the motion to dismiss, that jurisdiction was a question of law and it was proper in Kent. But the court

---

[56] State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002).

[57] Id. at 626-27; Hayward, 152 Wn. App. at 641.

[58] See State v. L.J.M., 129 Wn.2d 386, 396-97, 918 P.2d 898 (1996).

[59] See State v. Norman, 145 Wn.2d 578, 589, 40 P.3d 1161 (2002); Lane, 112 Wn.2d at 476.

[60] See Lane, 112 Wn.2d at 476.

also instructed the jury that the prosecution had to prove beyond a reasonable doubt, that "Shao paid or agreed to pay a fee to another person pursuant to an understanding that in return for the fee, the other person or a third party would engage in sexual conduct with the defendant; and . . . ***the acts occurred in the city of Kent.***"[61] The court also instructed the jury pursuant to WPIC 4.27 to assist it in determining the location of Shao's acts in communicating with the undercover officer and agreeing to exchange money for sexual conduct.[62]

Because the municipal court properly instructed the jury on the elements of patronizing a prostitute, including an instruction that an act had to occur in Kent, the instructions accurately stated the law and contained no reversible error.

We affirm the RALJ court, which affirmed the judgments and sentences.

_Cox, J._

WE CONCUR:

_Mann, J._

_Appelwick, J._

---

[61] Clerk's Papers at 319 (emphasis added); see WPIC 48.10.

[62] See WPIC 4.27.