[Nos. 24314-1-III; 24400-8-III.   Division Three.   February 27, 2007.]

PHILLIP RICHARD SCHLEGEL, *Respondent*, v. THE DEPARTMENT OF LICENSING, *Appellant*.

THE STATE OF WASHINGTON, *Petitioner*, v. PHILLIP RICHARD SCHLEGEL, *Respondent*.

*Robert M. McKenna*, Attorney General, and *Susan S. DanPullo* and *Kathryn B. McLeod*, Assistants, for appellant.

*Gregory L. Zempel*, Prosecuting Attorney, and *Paul R. Sander*, Deputy, for petitioner.

*Chelsea C. Korte*, for respondent.

¶1 BROWN, J. — Washington Department of Fish and Wildlife (DFW) officers stopped Phillip R. Schlegel to check his hunting license under RCW 77.15.080(1). An officer smelled alcohol on Mr. Schlegel's breath. A driving under the influence (DUI) arrest followed. Mr. Schlegel unsuccessfully challenged the stop as an impermissible roadblock. Mr. Schlegel successfully appealed both his administrative license suspension and DUI conviction to the superior court. We granted discretionary review in both cases. We hold that the superior court erred in disregarding factual findings and incorrectly decided DFW lacked articulable suspicion under statutory authority to stop Mr. Schlegel. Accordingly, we reverse the superior court and affirm Mr. Schlegel's district court conviction for DUI and his Department of Licensing (DOL) license suspension.

## FACTS

¶2 The suspension facts (No. 24314-1-III) are derived from the DOL findings of fact and exhibit 1 admitted by the DOL hearing officer that incorporates the general report of DFW Officer Brian Fulton. The DUI facts (No. 24400-8-III)

are derived from the district court's memorandum decision on pretrial motions following the testimony of Officer Fulton.

¶3 On October 30, 2004, the opening day of elk hunting season, Officer Fulton stopped Mr. Schlegel and a passenger in a truck exiting the L.T. Murray Wildlife Area on Hutchins road (a one-lane, dirt road near an entrance gate). Officer Fulton described Hutchins road as a not well maintained "hunting road." Clerk's Papers (CP) (No. 24400-8-III) at 22. Officer Fulton testified he was contacting vehicles "[t]o check for wildlife, check for licenses." *Id.* at 20. Officer Fulton believed he had "articulable facts" under RCW 77.15.080 to stop some vehicles. *Id.* at 21.

¶4 Officer Fulton did not "contact everybody [he] saw." *Id.* at 22. Officer Fulton was stopping solely those vehicles containing people he believed "were engaged in hunting." *Id.* at 21. Officer Fulton saw the occupants of Mr. Schlegel's vehicle were "dressed in hunting clothing." CP (No. 24314-1-III) at 14, 32. Officer Fulton described the hunting clothing as "warm type clothing" and "consistent with what hunters type—typically wear." CP (No. 24400-8-III) at 21, 22. Officer Fulton testified Mr. Schlegel "was driving a vehicle consistent with elk hunters in that area." *Id.* at 21. Officer Fulton stepped into the road and signaled Mr. Schlegel to stop.

¶5 Officer Fulton spoke first with the passenger, who said "he and the driver had been elk hunting." CP (No. 24314-1-III) at 32. "They both had elk rifles sitting in the cab of the truck with them." *Id.* When Officer Fulton contacted Mr. Schlegel to verify his hunting license and tag, he smelled alcohol on Mr. Schlegel's breath. Mr. Schlegel was referred to the Washington State Patrol for investigation of DUI and arrested.

¶6 Mr. Schlegel challenged the basis of the stop in a hearing for the administrative suspension of his driver's license. In findings of fact and conclusions of law, the hearing officer concluded the officer was authorized by RCW 77.15.080(1) to stop Mr. Schlegel and ordered that the

administrative action to suspend his driver's license be sustained.

¶7 Mr. Schlegel successfully appealed to the superior court, where the court held the stop constituted an unlawful roadblock.

¶8 At his DUI trial, Mr. Schlegel unsuccessfully requested to suppress the evidence. The court concluded:

> [T]he checkpoint was established on the opening day of the general elk-hunting season and placed on an isolated road where hunting activity was to be expected. Only those vehicles that appeared consistent with "hunting activity" were stopped. The contact was brief in the governmental interest of enforcement of laws for the preservation of wildlife.

CP (No. 24400-8-III) at 14.

¶9 Mr. Schlegel was subsequently convicted. He appealed to the superior court. He then moved for res judicata application of the superior court's licensing decision to the appeal of the district court's suppression ruling. The motion was granted and his DUI charge was dismissed with prejudice.

¶10 We granted review of the superior court's order to dismiss the DUI charge and order reversing DOL's order.

## ANALYSIS

¶11 The issue is whether, under these facts, the district court and DOL erred in concluding Officer Fulton legally stopped Mr. Schlegel under RCW 77.15.080. Mr. Schlegel contends the stop was unconstitutional because it constituted an illegal roadblock under *City of Seattle v. Mesiani*, 110 Wn.2d 454, 755 P.2d 775 (1998) and, thus, the derived evidence should have been excluded.

¶12 "RALJ 9.1 governs our review of an order by a court of limited jurisdiction, and the implied consent statute governs our review of DOL's license revocation order." *Lewis v. Dep't of Licensing*, 125 Wn. App. 666, 673-74, 105 P.3d 1029 (2005) (footnote omitted) (citing RCW 46.20-

.308)). These orders are reviewed for errors of law. *Id.* at 674 (citing *State v. Frank*, 112 Wn. App. 515, 520, 49 P.3d 954 (2002) (citing RALJ 9.1(a))). Thus, we accept the limited jurisdiction court's findings when they are supported by substantial evidence and, like the superior court, we review for errors of law.

■ ¶13 We first examine the statutory grounds that the DOL hearing officer and district court found to justify the stop. "Where an issue may be resolved on statutory grounds, the court will avoid deciding the issue on constitutional grounds." *Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000).

■ ¶14 RCW 77.15.080(1) provides:

> Based upon articulable facts that a person is engaged in fishing, harvesting, or hunting activities, fish and wildlife officers have the authority to temporarily stop the person and check for valid licenses, tags, permits, stamps, or catch record cards.

¶15 For the wildlife officer's authority to be valid, the officer must have "articulable facts" that a person is engaged in hunting activities. RCW 77.15.080(1). Articulable means "a substantial possibility." *See State v. Kennedy*, 107 Wn.2d 1, 5-6, 726 P.2d 445 (1986) (regarding articulable suspicion for a *Terry*[1] stop).

■ ■ ¶16 Hunting is defined as "an effort to kill [or] injure" a "wild animal or wild bird." RCW 77.08.010(7). Washington authority has generally held that hunting involves more than the actual shooting of an animal. "Hunters begin to 'hunt big game' not when they actually encounter big game, but rather when they make an effort to kill or injure big game in an area where such animals may reasonably be expected." *State v. Walsh*, 123 Wn.2d 741, 748, 870 P.2d 974 (1994). In *Goodell v. Northwestern Mutual Accident Ass'n*, 130 Wash. 55, 62, 226 P. 266 (1924), the court held that an insured decedent was "engaged in hunting" as a joint enterprise when he rowed a boat while

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

his companion was shooting. We now turn to the unchallenged facts, verities on appeal.

¶17 First, Officer Fulton observed Mr. Schlegel's vehicle on the opening day of elk hunting season inside an elk hunting area. The truck's occupants wore hunting clothing, clothes of a type that hunters typically wear. When Officer Fulton first observed him, Mr. Schlegel was driving a vehicle consistent with the type that hunters use on a poorly maintained dirt hunting road. Based on his observations, a substantial possibility existed that he was engaged in hunting. Thus, articulable facts justified an initial, brief inquiry stop.

¶18 Second, while Officer Fulton approached the vehicle, he saw the occupants possessed elk rifles in the truck-cab. Thus, Officer Fulton's initial suspicions justifiably increased justifying time for further inquiry.

¶19 Third, Officer Fulton was immediately told by the passenger that the pair had been elk hunting, confirming his articulable suspicions and justifying contact with Mr. Schlegel, the driver. At this point, other facts were collected, that are not now contested, that ultimately led to the loss of Mr. Schlegel's license and his DUI conviction.

¶20 The DOL hearing examiner and the district court judge found the above facts, mainly from the testimony of Officer Fulton. A review court looks to the record to determine if the facts are supported by the record. They are. Thus, the question becomes whether the facts, as found, support the legal conclusions. They do. Therefore, the superior court erred in disregarding the unchallenged fact-finding accomplished by the DOL hearing examiner and the district court judge. Articulable facts existed indicating Mr. Schlegel was engaged in hunting activities when first observed by Officer Fulton, permitting a brief investigatory stop under authority of law, RCW 77.15.080(1). Hence, we decline to engage in a constitutional analysis.

¶21 In sum, hunting is a highly regulated activity. RCW 77.15.080 applied to the facts found by the DOL hearing

examiner and the district court judge show the wildlife officer's authority to stop Mr. Schlegel. The district court and DOL correctly interpreted and applied RCW 77.15.080 when considering Mr. Schlegel's roadblock challenge. Further, the record shows Officer Fulton did not stop every passing vehicle but restricted his brief investigatory stops to situations where he had articulable facts that the passersby were engaged in hunting activities. Therefore, this is not a roadblock case like *Mesiani*.

¶22 Reversed. We affirm the hearing officer and district court.

SWEENEY, C.J., concurs.

¶23 SCHULTHEIS, J. (dissenting) — Under RCW 77.15-.080(1), a wildlife officer who has reason to believe an individual is engaged in hunting activities may stop a person to check for a valid hunting license. Washington Department of Fish and Wildlife officers stopped Phillip R. Schlegel to check his hunting license as he drove out of a wildlife area. I disagree with the majority's holding that RCW 77.15.080(1) permits a wildlife officer to stop a moving motor vehicle because I can think of no circumstances under which a vehicle's occupants could be legitimately engaged in hunting activities. Other statutes allow wildlife officers to stop a motor vehicle under specific circumstances. For this reason, I must respectfully dissent.

¶24 I quickly part company with the majority, starting with its characterization of the facts. I would discount the wildlife officer's self-serving testimony, as well as the findings drawn from them, that Mr. Schlegel was on a *hunting* road, and he was dressed in *hunting* clothing, and driving a *hunting*-type vehicle.[2] As the officer himself admits, Mr. Schlegel was merely driving a truck on a dirt road and

---

[2] Although Mr. Schlegel did not specifically challenge these facts, their inclusion as a basis for the stop cannot be ignored for their lack of support. *See State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994) ("A trial court's erroneous determination of facts, unsupported by substantial evidence, will not be binding on appeal."). Although an unchallenged finding of fact will be considered a verity on appeal, a

wearing suitably warm clothing for the 20-degree weather. Nothing in the record indicates that the road to the wildlife area was specifically for hunters or that Mr. Schlegel was attired in hunter orange clothing.[3]

¶25 Mr. Schlegel claimed in his appellate brief, and the superior court found, that because the stop by the wildlife officers was unconstitutional, the evidence from the stop cannot be used to suspend his driver's license or by the State to support a driving under the influence (DUI) conviction. Although I agree with the result, a different approach is warranted.

¶26 The proper analysis begins with whether RCW 77.15.080 authorizes the stop the wildlife officers made. If not, the inquiry ends. But if the statute does authorize the stop, then the second question is whether that statutory authority violates the right to privacy guaranteed by article I, section 7 of the Washington State Constitution.[4]

¶27 The initial undertaking involves statutory interpretation, a question of law. *Medcalf v. Dep't of Licensing*, 133 Wn.2d 290, 297, 944 P.2d 1014 (1997); *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001). The "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of the legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002); *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001).

¶28 Under the plain meaning rule, we examine the entire statute in which the provision at issue is found, as

---

less strict approach is applied if the claimed error is clearly disclosed in the associated issues. *Sherrell v. Selfors*, 73 Wn. App. 596, 599, 871 P.2d 168 (1994).

[3] WAC 232-12-055(2) makes it "unlawful to hunt deer or elk during the modern firearm seasons in any manner unless the hunter is wearing fluorescent hunter orange clothing."

[4] Because the majority held only that RCW 77.15.080 authorized the stop, I think the majority opinion should meaningfully address the constitutional issue. The stop cannot be upheld on constitutional grounds.

well as related statutes or other provisions of the same act. *Campbell*, 146 Wn.2d at 10-12. If after this inquiry the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to construction aids, including legislative history. *Id.* at 12; *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

¶29 In both cases below, the district court and hearing officer each assumed that RCW 77.15.080 authorized the wildlife officers to stop a motor vehicle and detain its occupants to check for hunting licenses. This is an overly broad reading of the statute.

¶30 The statute at issue, RCW 77.15.080, provides:

(1) Based upon articulable facts that a person is engaged in fishing, harvesting, or hunting activities, fish and wildlife officers have the authority to temporarily stop the person and check for valid licenses, tags, permits, stamps, or catch record cards, and to inspect all fish, shellfish, seaweed, and wildlife in possession as well as the equipment being used to ensure compliance with the requirements of this title, and may request the person to write his or her signature for comparison with the signature on the license. Failure to comply with the request is prima facie evidence that the person is not the person named on the license. For licenses purchased over the internet or telephone, fish and wildlife officers may require the person, if age eighteen or older, to exhibit a driver's license or other photo identification.

(2) Based upon articulable facts that a person is transporting a prohibited aquatic animal species or any aquatic plant, fish and wildlife officers and ex officio fish and wildlife officers have the authority to temporarily stop the person and inspect the watercraft to ensure that the watercraft and associated equipment are not transporting prohibited aquatic animal species or aquatic plants.

¶31 For the wildlife officers' authority to be valid, the person to be stopped must be "engaged in . . . hunting activities." RCW 77.15.080(1). This statutory authority does not extend to stopping a motor vehicle. Traveling in a

motor vehicle is not, nor can it be, engaging in hunting activities.

¶32 The context of RCW 77.15.080(1) is consistent with this conclusion. Subsection 1 permits an inspection of "the equipment being used." This obviously refers to the equipment then in use to advance the hunting or fishing effort. No such equipment is in use while traveling in a motor vehicle.

¶33 The effort to kill or injure game does not take place inside a car. *See* RCW 77.08.010(7). To the extent it does, it constitutes a crime. *See* RCW 77.15.460 (prohibiting, in general, the possession or use of a loaded firearm in a motor vehicle). When a violation is found, then wildlife officers are authorized to arrest the person and conduct a warrantless search for and seizure of the evidence as provided by other statutes. RCW 77.15.092, .094.

¶34 The legislature saw fit to require a higher standard for searches and seizures of a motor vehicle. RCW 77.15.094 authorizes wildlife officers to conduct a warrantless search and seizure of a "vessel, conveyances, vehicles, containers, packages, or other receptacles" upon reasonable belief that they contain evidence of fish and wildlife violations. The statute also restricts the warrantless search and seizure "if the thing or place is protected from search without warrant within the meaning of Article I, section 7 of the state Constitution." RCW 77.15.094.

¶35 A higher standard is also required in subsection 2 of the statute at issue, which allows officers to "stop the person" and "inspect the watercraft." RCW 77.15.080(2). While the provision implicitly permits stopping watercraft, watercraft can be used while hunting or fishing. Still, the standard for stopping a watercraft in RCW 77.15.080(2) is higher. It requires the officer to have an articulable factual basis that "a person is transporting a prohibited aquatic animal species or any aquatic plant." RCW 77.15.080(2).

¶36 I also recognize that RCW 77.32.238 provides for disabled hunting permits and shooting from within a

parked vehicle. The licensing department argues that this statute shows that elk hunters may be stopped in their vehicles and asked to produce their hunting license and tags. The disabled hunting statute sets forth the exception, not the rule. The vehicle must be stopped and off the road when the firearm is discharged by the disabled person. RCW 77.32.238. Thus, RCW 77.15.080(1) does not authorize stopping a motor vehicle of a disabled hunter because when the vehicle is moving, the occupants are not engaged in hunting activities.

¶37 Finally, I acknowledge that a wildlife officer can also make a hunter stop his vehicle at a check station. *See* RCW 77.12.620 (authorizing check stations "to require hunters and fishermen occupying a motor vehicle approaching or entering a check station to stop and produce for inspection: (1) Any wildlife, fish, shellfish, or seaweed in their possession; (2) licenses, permits, tags, stamps, or catch record cards"). A check station must be "plainly marked by signs, operated by at least one uniformed fish and wildlife officer, and operated in a safe manner." RCW 77.12.620. No findings were made by the district court or by the hearing officer as to the existence of a check station compliant with the statute. And the facts do not provide a basis for any such findings.

¶38 In summary, my plain reading of the statute taken in context with the statutory scheme shows that the wildlife officers' authority under RCW 77.15.080(1) does not include stopping a person in a motor vehicle because no hunting activities are taking place at that time. The statutory scheme allows stopping, seizing, and searching vehicles, but only when there is at least suspicion of wrongdoing or when other specific safeguards are in place.

¶39 Because RCW 77.15.080(1) does not authorize the stop the wildlife officers made in this case, the district court and licensing department erroneously interpreted RCW 77.15.080(1). I would therefore affirm the superior court's reversal of the district court's DUI conviction and the Department of Licensing's license suspension.