# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PACIFIC COUNTY DEPARTMENT OF COMMUNITY DEVELOPMENT, | No. 49467-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DANIEL ALAN DRISCOLL, d/b/a OYSTERVILLE SEA FARMS, | |
| Respondent. | |

MAXA, C.J. – Pacific County appeals a superior court decision reversing a district court ruling that Dan Driscoll committed two infractions of zoning and shoreline regulations in the operation of his seafood market business, Oysterville Sea Farms (OSF). The district court ruled that although OSF's operation of a seafood market was a lawful nonconforming use, selling beer and wine and operating a food establishment with indoor seating constituted unlawful expansions of that nonconforming use.

We review the district court's ruling and hold that (1) Driscoll could properly raise a defense that he engaged in legal nonconforming use in an infraction hearing rather than in a petition under the Land Use Petition Act (LUPA), chapter 36.70C RCW; (2) the district court erred in concluding that OSF's sale of beer and wine and the operation of a food establishment with indoor seating constituted unlawful expansions rather than lawful intensifications of its

nonconforming use; and (3) OSF's placement of outdoor seating on its deck constituted a lawful intensification of its nonconforming use.

Accordingly, we reverse the district court's determination that Driscoll committed infractions of zoning and shoreline regulations.

FACTS

*The OSF Property and Its Uses*

OSF is located in Oysterville, on the western shore of Willapa Bay. The OSF property consists of two buildings and a large deck that extends over the shoreline. The buildings were constructed in the 1920s and were historically used as an oyster cannery. At least by 1973, Driscoll's father had operated OSF as a business that sold oysters and clams, as well as various related retail items like oyster knives, T-shirts, cards, and books. That retail business continued until Driscoll assumed ownership in 1991.

Beginning in the mid-1990s and continuing through at least 2011, Driscoll began to add items to OSF's retail sales business. Among these other items were cranberries, wine, cereal, pasta, spices, syrups, and jams or jellies. OSF also began selling food for consumption on the premises, including hot prepared foods like clam chowder and steamed oysters and clams, and also began serving beer and wine for consumption on the premises. OSF added stools inside, and a picnic table and a few chairs on the deck for customers to use while eating or drinking.

Throughout this process, Driscoll communicated with local county officials to ensure the business met code requirements. For example, in 1996 or 1997 the County informed Driscoll that he needed a health license. To qualify for the license, Driscoll needed to install a commercial kitchen, which he did. He also contacted the County's planner, who stated that "the

building was grandfathered" and Driscoll could use it for commercial activities. Report of Proceedings (Oct. 17, 2014) at 55-56.

In 2009, Driscoll communicated with county employees about placing picnic tables on the property's deck and installing a small deli. One employee responded that there was no issue doing so. By 2010, Driscoll had obtained several liquor licenses. Although the County was involved in that process, it did not state at any point that zoning regulations prevented Driscoll from selling alcohol.

*Notice of Infractions*

In 2011, the County began to express concerns with Driscoll's use of the OSF property. In May 2012, the County sent Driscoll a letter that listed specific items that either were allowed or were not allowed for sale. The letter suggested that the County would bring an enforcement action if Driscoll did not comply. OSF continued to sell items that the County considered to be improper.

On June 18, 2014, the County sent Driscoll a notice of infraction, alleging that Driscoll had violated zoning regulations in Pacific County Ordinance (PCO) 162 and Pacific County Shoreline Master Program (SMP) regulations. The County later submitted an amended notice that included two counts. In count one, the County alleged that Driscoll violated PCO 162 by engaging in a commercial use that was prohibited in either (a) an aquaculture district or (b) a restricted residential district. In count two, the County alleged that Driscoll violated the SMP by engaging in a commercial use without a permit that was prohibited in either (a) a conservancy environment or (b) an urban environment. The infraction notice stated that Driscoll was subject to a maximum penalty of a $1,025 fine for each violation.

*First District Court Decision*

The district court held a bench trial and issued extensive findings of fact and conclusions of law in a decision dated February 25, 2015.[1] The court found that OSF had engaged in some form of seafood preparation since the 1920s, selling oysters directly to customers. These activities began long before the County adopted the SMP in 1974 and enacted a zoning ordinance applicable to the OSF property in 1981.

The district court found that since before 1974, OSF also had sold retail items related to oyster preparation and consumption. The County conceded that by 1981, the year PCO 162 was enacted, OSF had established itself as a business selling oysters and other products, some associated with oysters and some not. After 1981, OSF also began providing seating for customers to consume food and beverages prepared and served on the premises.

The district court found that operation of a seafood market lawfully existed before both the SMP and PCO 162 came into effect. In addition, the court found that the variation in the seafood items sold did not change the nature or character of OSF's nonconforming use. The court also found that OSF's variation in retail product inventory to include items like packaged pasta, cranberries, jams, spices, and wine did not change the nature or character of the nonconforming use.

On the other hand, the district court found that OSF's preparation and sale of seafood products (other than oysters on the half shell) for immediate consumption and the operation of a restaurant did not exist as an activity before enactment of the SMP or PCO 162. And the court

---

[1] Due to some apparent error, the district court's initial decision was designated for inclusion in the clerk's papers but not transmitted to this court. However, the parties submitted the decision as an attachment to their motion for discretionary review. Mot. for Discretionary Review App. A. For efficiency purposes, we refer to the decision rather than require supplementation of the record.

found that operation of a "restaurant" had changed the nature and character of OSF's use, was different in kind than the original seafood business, and had altered the nonconforming use.

The district court entered several conclusions of law. The court ruled that OSF's sale of fresh seafood products generally found in a seafood sales store was an authorized nonconforming use; any variation in the inventory of seafood items constituted an allowed intensification of that nonconforming use. The court also ruled that two other activities constituted an allowed intensification of the nonconforming use: the sale of non-seafood items generally found in a seafood sales store and OSF's food preparation to the extent that it involved the sale of oysters on the half shell for immediate consumption.

However, the district court ruled that, in the absence of additional evidence, OSF's sale of food (other than oysters on the half shell) for immediate consumption was an unlawful expansion of its nonconforming use. The court also ruled that it was an unlawful expansion to offer onsite food preparation involving formal food consumption on the premises and to offer outside seating. Finally, the court ruled that the sale of beer and wine for consumption on the premises was an unlawful expansion.

Based on these conclusions of law, the district court concluded that Driscoll had not committed any infractions regarding "inventory in OSF's retail store" and the "sale of oysters on the half shell for immediate consumption in an informal manner." Decision at 11. The court reserved the issue of whether Driscoll committed an infraction by operating a restaurant pending further testimony and argument, including on the issues of waiver and consent. The court stated that depending on additional evidence, it might reconsider its finding and conclusion that the sale of food for immediate consumption was more than an intensification of the nonconforming use.

*Second District Court Decision*

The district court conducted a second day of trial in which Driscoll presented additional testimony and evidence. On September 17, 2015, the court entered a second written decision.

The district court first concluded that the sale of beer and wine was not part of OSF's nonconforming use, which was limited to the operation of a seafood market. The court then addressed whether the County was estopped from preventing OSF from operating a restaurant. The court reviewed in detail the evidence supporting Driscoll's contention that "over the years [the County] consistently assisted and encouraged his efforts to establish a restaurant where the sale and consumption of cereal, fish, and alcohol could occur and be consumed at tables inside and outside of the retail area." Clerk's Papers (CP) at 10.

The district court ruled as follows:

> [I]t is clear [Driscoll] may not operate a restaurant which includes indoor seating or the service of wine or other spirits. It is also clear that [Driscoll] may operate a "small deli" which sells seafood as its primary product with incidental non-seafood products also available for sale. It also seems clear [Driscoll] can operate an outdoor seating area limited to the back deck where patrons may consume the product purchased on site including cereal, fruit, and fish because Pacific County is estopped to deny him that ability.

CP at 13-14.

The district court concluded that Driscoll committed infractions as alleged in both counts. For count one (regarding PCO 162), the court ruled that Driscoll committed the infraction "as it pertains to the sale of wine and spirits." CP at 14. For count two (regarding the SMP), the court ruled that Driscoll committed the infraction "by operating a food establishment with indoor seating without a valid permit and manufacturing cereal on the premises." CP at 14.

*Superior Court Appeal*

The County appealed the district court's ruling to superior court.[2] Driscoll filed a cross appeal of the district court's ruling that he had committed the two infractions.

Regarding the cross-appeal, the superior court issued a memorandum opinion that mostly ignored the district court's findings of fact and conclusions of law. Specifically, the court did not expressly address the district court's findings and conclusions on whether certain activities constituted intensifications or expansions of OSF's nonconforming use. Instead, the court analyzed the provisions and purposes of PCO 162 and the SMP, and concluded that the district court's decision was "inconsistent with the intent and language" of those provisions. CP at 18. The superior court reversed both infractions.

The County filed a motion for discretionary review of the superior court's ruling, which a commissioner of this court granted.

## ANALYSIS

### A.    STANDARD OF REVIEW

RALJ 9.1 governs the appellate review of district court decisions. Under RALJ 9.1(a), a superior court reviews a district court's decision to determine whether the district court has committed any errors of law. Under RALJ 9.1(b), the superior court must accept both the district court's express findings of fact and findings that may reasonably be inferred from the judgment if substantial evidence supports those findings. The superior court does not consider the evidence de novo. *State v. Weber*, 159 Wn. App. 779, 786, 247 P.3d 782 (2011).

---

[2] Driscoll moved to dismiss the County's appeal as improper under the county ordinance governing appeal of civil infractions, which stated that the County could not appeal a finding that an infraction had not been committed. The superior court dismissed the County's appeal.

The superior court's decision on appeal is subject to discretionary review in the court of appeals. RALJ 9.1(h). The same rules that apply to the superior court's review also apply to our review. *See Schlegel v. Dep't of Licensing*, 137 Wn. App. 364, 369, 153 P.3d 244 (2007). We review the district court record. *Elliott Bay Adjustment Co. v. Dacumos*, 200 Wn. App. 208, 212-13, 401 P.3d 473 (2017). We determine whether substantial evidence supports the district court's factual findings and whether the district court committed any errors of law. *Kyle v. Williams*, 139 Wn. App. 348, 353, 161 P.3d 1036 (2007). We review legal issues de novo. *Elliott Bay Adjustment*, 200 Wn. App. at 213.

Because we review the district court record and review legal issues de novo, we do not give the superior court's decision any deference. *See Weber*, 159 Wn. App. at 787 ("This court sits in the same position as the superior court in review of the district court decision.").

B.      PACIFIC COUNTY LAND USE REGULATIONS

1.      SMP Regulations

Pacific County adapted the SMP in 1974 for the purpose of protecting the functions and values of shoreline environments of statewide and local significance. SMP § 1(E). The SMP identifies four "environments": natural, conservancy, rural, and urban. SMP § 25(B). The County's infraction notice alleged in the alternative that OSF engaged in prohibited commercial uses in either the conservancy environment or the urban environment.

In the conservancy environment, commercial development is prohibited except for low intensity recreational development or activities that do not substantially change the character of the environment. SMP § 7(B)(1). Even then, the person proposing to engage in the commercial use must apply for a permit. SMP § 7(B)(2). A permit for commercial use may be granted

subject to a requirement that any commercial structure or facility be set back from the ordinary high water mark by a minimum of 100 feet. SMP § 7(B)(3)(a).

In the urban environment, commercial development is allowed. SMP § 7(D)(1). However, the person proposing to engage in the commercial use must apply for a permit. SMP § 7(D)(2). A permit for commercial use may be granted subject to a requirement that any commercial structure or facility be set back from the ordinary high water mark by a minimum of 10 feet.[3] SMP § 7(D)(3)(a).

2. PCO 162 Regulations

The Pacific County zoning ordinance, PCO 162, was enacted in 1981. PCO 162 divides the county into districts. *See* PCO 162 § 1(G). The County's infraction notice alleged in the alternative that OSF engaged in prohibited uses in either the aquaculture district or the restricted residential district.

For the aquaculture district, "[r]etail and wholesale seafood sales" are allowed accessory uses in the "aquaculture sub-district," which generally encompasses lands found in Willapa Bay. PCO 162 § 8(A), (D)(4). All uses not listed are prohibited. PCO 162 § 8(H).

The restricted residential district permits uses like single-family residential dwellings and allows accessory uses including ones that are "incidental to a primary permitted residential use," like a garage or pool. PCO 162 § 12(B), (C). All uses not listed are prohibited. PCO 162 § 12(F). Commercial uses are not referenced in the restricted residential section.[4]

---

[3] The environment in which the OSF property is located is unclear from the record. The district court did not make a factual finding or a legal conclusion regarding whether the OSF property was subject to the requirements of the conservancy environment or the urban environment. But determining this issue is not material to our resolution of this appeal.

[4] As with application of the SMP, the district in which the OSF property is located is somewhat unclear from the record. The district court did not make a factual finding or a legal conclusion

### 3. Nonconforming Use Provisions

PCO 162 addresses structures and uses that were lawful before that ordinance was passed but would be prohibited, regulated, or restricted under the ordinance's provisions. PCO 162 § 26(A). PCO 162 § 26(A) states that "[i]t is the intent of this Ordinance to permit these nonconformities to continue until they are removed." PCO 162 § 26(A) further states an intent that "nonconformities *shall not be enlarged upon, expanded or extended*, nor be used as grounds for adding other structures or uses." (Emphasis added.) The language in SMP § 26(A) regarding the intent to allow nonconforming uses to continue is essentially the same as the language in PCO § 26(A).

PCO 162 § 26(G) further states that any nonconforming use that existed on the ordinance's effective date shall be "grandfathered." SMP § 26(B)(1) similarly states that structures and uses that were lawful before the SMP was passed but are not in conformity with SMP provisions may be continued subject to the condition that "[n]o such structure or use activity shall be expanded, changed, enlarged or altered."

### 4. Enforcement

If a use does not comply with either the SMP or PCO 162, the County may bring an enforcement action by filing a notice of infraction. PCO 165 § 2(B); SMP § 24(C)(13). Violations of the SMP and PCO 162 constitute civil infractions. PCO 165 § 1(D). Infraction cases must be brought in district court. PCO 165 § 2(C).

---

regarding whether the OSF property was subject to the requirements of the aquaculture or residential district, although the superior court stated that the parties had stipulated to the residential district. Again, determining this issue is not material to our resolution of this appeal.

C.     NATURE OF SUPERIOR COURT REVIEW

Initially, the County argues that the superior court erred by engaging in a de novo review of the facts presented in the district court trial in violation of its role under RALJ 9.1. We agree, but this issue has no effect on our review.

As noted above, the superior court must accept the district court's findings if supported by substantial evidence and determine only whether the district court committed legal errors. RALJ 9.1(a)-(b). But here, the superior court essentially disregarded the district court's decision. Rather than merely reviewing the district court's findings and conclusions, the superior court undertook a completely different approach and analysis to reach its own conclusions.

However, even the County acknowledges that we do not address the superior court's decision and instead review the district court's decision. As stated above, we review the district court record and do not give deference to the superior court's decision. *See Elliott Bay Adjustment*, 200 Wn. App. at 212-13. Therefore, how the superior court analyzed the case is immaterial to our review.

D.     AVAILABILITY OF NONCONFORMING USE DEFENSE

The County argues that the district court erred in allowing Driscoll to raise as a defense to the infraction notice that OSF's activities were lawful as a nonconforming use. The County claims that it issued a land use decision under LUPA in its May 2012 letter, which told Driscoll what items could be sold at OSF and suggested that the County would bring an enforcement action if Driscoll did not comply. Therefore, the County argues that Driscoll could raise a nonconforming use defense only under LUPA. We disagree.

LUPA provides "the exclusive means of judicial review of land use decisions," with certain specific exceptions. RCW 36.70C.030. However, LUPA applies only to "land use

11

decisions" as defined in RCW 36.70C.020(2). *Durland v. San Juan County*, 182 Wn.2d 55, 64, 340 P.3d 191 (2014). Under RCW 36.70C.020(2)(c), a "land use decision" includes "[t]he enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property." But that statute continues: "However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter." RCW 36.70C.020(2)(c).

Here, as noted above, a Pacific County ordinance states that violations of PCO 162 and the SMP constitute civil infractions and that infraction cases must be brought in district court. *See* PCO 165 § 1(D), 2(C). In other words, the County is required by law to enforce the ordinances at issue – PCO 162 and the SMP – in a court of limited jurisdiction. Under RCW 36.70C.020(2)(c), in this situation a petition cannot be brought under LUPA. *See Post v. City of Tacoma*, 167 Wn.2d 300, 312, 217 P.3d 1179 (2009) (holding that LUPA was inapplicable to municipal code violations because the procedural scheme required that the City enforce infractions in courts of limited jurisdiction).

Accordingly, we hold that the district court did not err in allowing Driscoll to raise a nonconforming use defense.

E.      INTENSIFICATION OR EXPANSION OF NONCONFORMING USE

Driscoll argues that the district court erred in concluding that selling beer and wine and operating a food establishment with indoor and outdoor seating constituted unlawful expansions of OSF's nonconforming use.[5] We agree.

---

[5] The district court also ruled that Driscoll had committed an infraction by manufacturing cereal. However, the superior court ruled that the record did not support a finding that Driscoll sold manufactured cereal on the OSF property and the parties do not contest that conclusion.

1.    Legal Background

A nonconforming use is one that lawfully existed before a change in regulation and may continue even though it does not comply with current regulations. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 268, 337 P.3d 328 (2014). A nonconforming use may continue because requiring immediate cessation would be both unfair and would potentially violate due process. *Id.*

As time passes, a nonconforming use may grow in volume or intensity. *Id.* But even though a property owner may generally continue a protected nonconforming use, "there is no right to 'significantly change, alter, extend, or enlarge the existing use.' " *Id.* (quoting *Rhod–A– Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 7, 959 P.2d 1024 (1998)). A nonconforming use may be " 'intensified' " but may not be " 'expanded.' " *Kitsap Rifle*, 184 Wn. App. at 268 (quoting *City of University Place v. McGuire*, 144 Wn.2d 640, 649, 30 P.3d 453 (2001)). This court in *Kitsap Rifle* explained how to distinguish between intensification and expansion:

> When an increase in volume or intensity of use is of such magnitude as to effect a fundamental change in a nonconforming use, courts may find the change to be proscribed by the ordinance. Intensification is permissible, however, where the nature and character of the use is unchanged and substantially the same facilities are used. The test is whether the intensified use is "different in kind" from the nonconforming use in existence when the zoning ordinance was adopted.

*Id.* at 269 (quoting *Keller v. City of Bellingham*, 92 Wn.2d 726, 731, 600 P.2d 1276 (1979)).

The expansion/intensification determination is a question of law. *Kitsap Rifle*, 184 Wn. App. at 272. Therefore, we review de novo the district court's legal conclusions on this issue. *Elliott Bay Adjustment*, 200 Wn. App. at 213.

In *Kitsap Rifle*, this court considered a county code provision that addressed nonconforming uses and concluded that the code provision prohibited expansion but not

intensification of a nonconforming use. 184 Wn. App. at 271-72. The provisions of PCO 162 and the SMP are similar. *Compare* SMP § 26(A), (B)(1), *and* PCO 162 § 26(A), *with Kitsap Rifle*, 184 Wn. App. at 271. Therefore, we hold that PCO 162 and the SMP prohibit expansion but not intensification of a nonconforming use.

In distinguishing between intensification and expansion, courts have held that a mere increase in volume of activity is an allowed intensification. For example, in *Kitsap Rifle* this court held that a shooting range's expanded hours – from daylight-only to between 7:00 AM and 10:00 PM – did not fundamentally change the nature and character of the range's use. 184 Wn. App. at 273. And in *Keller*, a chlorine manufacturing company wanted to increase its production capacity by between 20 to 25 percent, requiring the addition of six 50-foot-long electrolytic cells to the existing 26 cells. 92 Wn.2d at 727-28. The court held that this addition was merely an intensification because it did not result in a use that was "different in kind," and therefore was permissible. *Id.* at 731-32.

By contrast, there is a point at which an activity changes so much that the nature of the use is significantly different, resulting in an unlawful expansion. In *Kitsap Rifle*, this court concluded that two additional changes resulted in an unlawful expansion. First, the shooting range began training commercial, for-profit organizations as well as Navy personnel in a manner that "represented a fundamental change in use and was completely different in kind" than a shooting range open to club members and the general public. *Kitsap Rifle*, 184 Wn. App. at 273. Second, the range increased the noise level by allowing explosive devices and higher caliber weaponry, resulting in noise that was "frequently loud, disruptive, pervasive, and long in duration" rather than "occasional and background in nature." *Id.* at 274.

14

Similarly, in *Meridian Minerals Co. v. King County*, a quarry had previously been used exclusively for the railroad landowner, which operated on a seasonal basis and primarily used rail lines to transport rock. 61 Wn. App. 195, 210, 810 P.2d 31 (1991). The court held that a threefold increase of the extraction amount and the addition of 14 daily truck trips amounted to a difference in kind and therefore was a prohibited enlargement. *Id.*

2. Nonconforming Use Analysis

The district court ruled that OSF's lawful intensification of its nonconforming use included the operation of a retail store selling various seafood products, non-seafood food items, and merchandise. The court referred to this lawful activity as the operation of a "seafood market," Decision at 8, 11-12; CP at 8, or a "small deli." CP at 13. The issue here is whether the sale of beer and wine and the operation of a food establishment with indoor and outdoor seating are intensifications or expansions of OSF's nonconforming use. And as discussed above, our review of these issues is de novo, and is not deferential to the district court's conclusions.

Significantly, we analyze OSF's operation of its seafood market at the time of the infraction notices. We express no opinion as to whether different or expanded uses since then would constitute intensifications or expansions.

a. Sale of Beer and Wine

The district court made findings that after 1981 and as of 2011, OSF sold beer and wine that could be consumed on the premises. But the court made no specific factual findings regarding what effect serving beer and wine for consumption on the premises had on OSF's use as a seafood market.

We conclude that the retail sale of beer and wine for consumption *off* the premises constitutes an intensification rather than an expansion. In its first decision, the district court

made a finding that "[t]he variation in OSF's retail product inventory – with OSF selling things such as packaged pasta, cranberries, jams, spices, and *wine . . .* – does not change the nature or character of OSF's nonconforming use." Decision at 9 (emphasis added). The retail sale of beer is not different in kind than the sale of wine or other types of food and beverages for offsite consumption.

The sale of beer and wine for consumption *on* the premises is a closer call. Operating a drinking establishment where the focus of the business is alcohol sales or remodeling to create a bar might constitute a fundamental change from a seafood market. But here there was no evidence that beer and wine sales were a significant part of OSF's business. Further, by allowing its customers to consume beer and wine onsite, OSF simply made different types of consumption available to the people that already were customers of the seafood market. And "substantially the same facilities [were] used." *Keller*, 92 Wn.2d at 731. Under these circumstances, we conclude that OSF's sale of beer and wine for consumption on the premises did not constitute a fundamental change in the nature and character of its seafood market.

Applying de novo review, we hold that OSF's sale of beer and wine for consumption off or on the premises was a lawful intensification of OSF's nonconforming use as a seafood market. Therefore, we hold that the district court erred in ruling that OSF had committed an infraction regarding the sale of beer and wine.

### b. Operation of a Food Establishment with Indoor Seating

The district court made a factual finding that after 1981 OSF opened a "restaurant," with food and beverages prepared and consumed on the premises. Decision at 6-7. The court found that OSF's operation of a restaurant changed the character of OSF's nonconforming use. The court also referred to OSF's business as a restaurant in other findings and conclusions.

16

Operating a full service restaurant with a separate dining room might constitute a fundamental change from a seafood market. But substantial evidence does not support the court's finding that OSF's operation could be characterized as a "restaurant." OSF prepared some food for consumption on the premises, but the menu of prepared food was limited. And there is no evidence in the record that there was a separate dining area on the premises; OSF merely had "stools" at the facility's oyster bar. Finally, there is no evidence in the record that OSF ever seated people or served customers where they sat; customers apparently were served at a counter for takeout or immediate consumption. Therefore, we will disregard the district court's findings that refer to a restaurant because they are not supported by substantial evidence.

The district court's conclusion that OSF had committed an infraction was not expressly based on its findings that OSF was operating a restaurant. The court identified the infraction not as operating a restaurant, but as "operating a food establishment with indoor seating without a valid permit." CP at 14. Consequently, we must determine whether operating a food establishment with indoor seating constituted an intensification or an expansion of OSF's use.

Selling a wide variety of prepared food that is unrelated to seafood might constitute a fundamental change from a seafood market. But OSF's menu was limited to the types of food one would expect to find at a seafood market: oysters, steamer clams, steamed crabs, clam chowder, and shrimp and crab cocktail. And OSF did not transform its seafood market into a different type of business or remodel the facilities. OSF merely provided a few stools inside the store so customers could immediately eat the seafood products they purchased. Under these circumstances, we conclude that OSF's operation of a food establishment with indoor seating did not constitute a fundamental change in the nature and character of its seafood market.

Applying de novo review, we hold that OSF's operation of a food establishment that serves limited varieties of seafood over a counter for consumption on the premises was a lawful intensification of OSF's nonconforming use as a seafood market. Therefore, we hold that the district court erred in ruling that OSF had committed an infraction regarding the operation of a food establishment with indoor seating.

### c. Placement of Outdoor Seating

The district court suggested in its first ruling that it was an unlawful expansion to offer outdoor seating. But the court ultimately ruled that OSF had not committed an infraction regarding outdoor seating because the court concluded in its second ruling that the County was equitably estopped from enforcing the SMP or PCO 162 with regard to the outdoor seating area. The County argues that this estoppel ruling was erroneous. Driscoll argues that the County cannot appeal a finding that no infraction was committed under the terms of PCO 165.

We decline to address either of these arguments. We may affirm a lower court's decision based on any grounds supported by the record. *Linth v. Gay*, 190 Wn. App. 331, 336, 360 P.3d 844 (2015), *review denied*, 185 Wn.2d 1012 (2016). In the interest of judicial economy, we apply de novo review to determine that OSF's placement of outdoor seating constituted a lawful intensification of its nonconforming use.

OSF's facility includes a large deck that extends over the shoreline. Operating a restaurant-type dining area that filled the deck with tables and chairs might constitute a fundamental change from a seafood market. But here the evidence showed that OSF's "outdoor seating" consisted of a few tables and a few chairs. Further, there was undisputed testimony that several other seafood markets in the area had limited outdoor seating. Under these

18

circumstances, we conclude that OSF's placement of outdoor seating did not constitute a fundamental change in the nature and character of its seafood market.

Applying de novo review, we hold that OSF's placement of outdoor seating on its deck consisting of a few tables and a few chairs was a lawful intensification of OSF's nonconforming use as a seafood market. Therefore, we hold that the district court did not err in ruling that OSF had not committed an infraction regarding the installation of an outdoor seating area.

CONCLUSION

We reverse the district court's ruling that Driscoll committed one infraction under PCO 162 and one infraction under the SMP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
JOHANSON, J.

_____
SUTTON, J.