

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38969-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| JAMES MICHAEL MILLER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — RCW 77.15.080 authorizes Department of Fish and Wildlife (DFW) officers to perform a brief investigatory stop when "articulable facts" indicate a person is "engaged in . . . hunting activities." Relying on this statute, DFW officers stopped James Miller's sport-utility vehicle (SUV) in the Colockum Wildlife Area when they saw him wearing an orange sweatshirt and slowly driving down a bumpy road during modern firearm deer and elk season. In the course of the stop, officers discovered a loaded shotgun and rifle on the passenger seat and Mr. Miller was charged with misdemeanor firearms violations. Prior to trial, Mr. Miller moved to suppress evidence of the loaded firearms, arguing they were discovered as a result of an illegal stop. The trial court denied the motion and Mr. Miller was convicted. We now reverse.

By its plain terms, RCW 77.15.080 permits an investigative stop only when the totality of the circumstances demonstrates a substantial possibility that the target of the stop is actively engaged in hunting. Rarely, if ever, will a person in the act of driving a vehicle be "engaged in . . . hunting activities." RCW 77.15.080. Hunting and driving are incompatible. To the extent this court's prior opinion in *Schlegel v. Department of Licensing*, 137 Wn. App. 364, 153 P.3d 244 (2007) states otherwise, we respectfully disagree with that decision.

Mr. Miller was doing nothing more than driving his SUV at the time DFW officers performed the stop. This was not a hunting activity. The stop therefore did not fall under the purview of RCW 77.15.080 and Mr. Miller's motion to suppress should have been granted. We reverse Mr. Miller's conviction and remand for further proceedings.

FACTS

DFW officers were patrolling the Colockum Wildlife Area during modern firearm deer and elk season when they observed an SUV traveling slowly on a bumpy "green dot road." Clerk's Papers (CP) at 25. In partnership with the Department of Natural Resources and private landowners in Kittitas and Yakima counties, green dot roads are cooperatively managed by DFW for use by a "wide variety of recreationalists" to access "camping, hunting, wildlife viewing, and ATV [all-terrain vehicle] and off-road vehicle

2

riding, while protecting sensitive habitat from damage caused by motorized vehicles."

*Recreational Opportunities and Rules on Your WDFW Public Lands*, WASH. DEP'T OF

FISH & WILDLIFE, https://wdfw.wa.gov/about/wdfw-lands/public-conduct#green-dot

[https://perma.cc/H5TD-KNXN]. The DFW officers observed the driver of the SUV—

later identified as James Miller—was wearing an orange sweatshirt. The officers believed

Mr. Miller was "engaged in . . . hunting activities." RCW 77.15.080. As a result, they

stopped the SUV to inquire as to compliance with state game and licensing regulations.

During the stop, the officers observed a rifle and shotgun lying on the SUV's

passenger seat. They asked to check the firearms to verify they were unloaded. Mr. Miller

acquiesced and a live round was found in the chamber of the shotgun. Mr. Miller was

cited for possessing a loaded shotgun in his vehicle in violation of RCW 77.15.460(1),

a misdemeanor offense. The State subsequently charged Mr. Miller with that offense in

Kittitas County District Court.[1]

During pretrial proceedings, Mr. Miller filed a motion to suppress the evidence

obtained by the DFW officers, arguing it was the fruit of an unconstitutional seizure,

and to dismiss the charges. The district court denied the motion. The court found the

---

[1] The State initially charged Mr. Miller with a second violation of
RCW 77.15.460(1), for possessing a loaded rifle in his vehicle, but that charge
was eventually dismissed during trial at the close of the State's case-in-chief.

DFW officers reasonably believed Mr. Miller was "engaged in . . . hunting activities" and thus the stop was authorized under RCW 77.15.080. The case proceeded to a jury trial and Mr. Miller was convicted.

Mr. Miller appealed his conviction to the superior court, arguing the district court erred by denying his motion to suppress. The superior court denied the appeal, relying on this court's interpretation of RCW 77.15.080 in *Schlegel*. *See* 137 Wn. App. at 366, 370-71. We granted discretionary review.

ANALYSIS

Mr. Miller argues RCW 77.15.080 did not authorize DFW officers to stop his SUV and, if it did, the stop violated the Fourth Amendment to the United States Constitution. We may avoid reaching Mr. Miller's constitutional argument if we can resolve his case on statutory grounds. *See State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992). Thus, we begin by interpreting RCW 77.15.080. Our review is de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

When interpreting a statute, our "fundamental objective" is to effectuate the legislature's intent. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017). If a statute's plain text is unambiguous—that is, where it is subject to only one reasonable interpretation—this court's task begins and ends with

that plain language. *State v. Delgado*, 148 Wn.2d 723, 726-27, 63 P.3d 792 (2003).

In pertinent part, RCW 77.15.080 reads:

Based upon *articulable facts* that a person *is* engaged in fishing, harvesting, or *hunting activities*, fish and wildlife officers and ex officio fish and wildlife officers have the authority to temporarily stop the person and check for valid licenses, tags, permits, stamps, or catch record cards, and to inspect all fish, shellfish, seaweed, and wildlife in possession as well as the equipment being used to ensure compliance with the requirements of this title.

(Emphasis added.) Three terms are pertinent to our statutory analysis: "articulable facts,"

"is," and "hunting activities." We discuss each in turn.

RCW 77.15.080 requires law enforcement to have "articulable facts" indicating

a regulated activity is underway in order to perform a stop. This term of art has been

interpreted as referencing the familiar *Terry*[2] stop standard. *See Schlegel*, 137 Wn. App.

at 369. Under *Terry*, officers must have more than a "mere hunch[]" to perform a stop.

*State v. Doughty*, 170 Wn.2d 57, 63, 239 P.3d 573 (2010). "[A] traffic stop significantly

curtails the 'freedom of action' of the driver and [any] passengers." *Berkemer v. McCarty*,

468 U.S. 420, 436, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). Thus, to justify a stop, the

totality of the circumstances known to law enforcement must demonstrate a "substantial

possibility" that there is a basis for the stop. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

445 (1986). In the instant context, there must be a substantial possibility of "fishing, harvesting, or hunting activities" for a stop to be proper under RCW 77.15.080.

As relevant here, RCW 77.15.080 only permits the stop of a person who "is" engaged in hunting activities. The use of the word "is" carries legal significance. *See In re Dependency of D.L.B.*, 188 Wn. App. 905, 917, 355 P.3d 345 (2015). By selecting "is"—the present tense of the verb "to be"—the legislature indicated its intent that the statute apply only to present, ongoing activities. Past or future conduct is not covered. Thus, it is not enough that an officer suspects a person has recently been engaged in hunting or may soon be so engaged.

Finally, we examine the term "hunting activities." Here, "'[t]o hunt'" means "an effort to kill, injure, harass, harvest, or capture a wild animal or wild bird." RCW 77.08.010(33). Our Supreme Court has further explained that an individual begins to hunt "when they make an effort to kill or injure . . . game in an area where such animals may reasonably be expected." *State v. Walsh*, 123 Wn.2d 741, 748, 870 P.2d 974 (1994). And an "activity" is simply the "collective acts" of one or more people "engaged in a common enterprise." BLACK'S LAW DICTIONARY 42 (11th ed. 2019).

Piecing the foregoing terms together, we interpret RCW 77.15.080 to limit stops based on suspicion of "hunting activities" to the following circumstances: officers must

6

be aware of facts creating a substantial possibility that a person to be stopped is presently engaged in an effort to kill, injure, harass, harvest, or capture wild animals or wild birds in an area where such animals may reasonably be expected.

The State does not quibble with this interpretation; instead, it claims this standard has been met. The State points out that it was modern firearm deer and elk season and Mr. Miller was driving slowly in a wildlife area while wearing an orange sweatshirt. According to the State, Mr. Miller might have been scouting out a potential hunting location as he drove along the green dot road. *See* Wash. Ct. of Appeals oral argument, *State v. Miller*, No. 38969-3-III (Mar. 5, 2024), at 24 min., 4 sec. through 27 min., 17 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://tvw.org.

We doubt that the State's scouting theory meets the statutory requirement of active engagement in hunting. According to DFW, scouting is best performed well in advance of an actual hunting trip. *See How To Prepare for Hunting Season*, WASH. DEP'T OF FISH & WILDLIFE, https://wdfw.wa.gov/hunting/requirements/preparing-to-hunt [https://perma.cc/25R8-E3CK]. Even if Mr. Miller was scouting out possible hunting locations, this does not mean that he was presently "engaged in . . . hunting activities." RCW 77.15.080.

7

But even if scouting qualified as "engag[ing] in . . . hunting activities," *id*.,

the record before us would still fail to justify the stop of Mr. Miller's vehicle. The

information known to officers at the time of the stop failed to indicate Mr. Miller was

likely engaged in hunting, as opposed to some other type of recreational activity. The

green dot road utilized by Mr. Miller is open to nonhunters and provides "access for

camping, hunting, wildlife viewing, and ATV and off-road vehicle riding." *See*

*Recreational Opportunities and Rules on Your WDFW Public Lands*, *supra*. Here, a

DFW officer described the road where Mr. Miller was stopped as "bumpy." CP at 25.

Thus, Mr. Miller's cautious pace on this road was advisable and unremarkable. And while

Mr. Miller was wearing an orange sweatshirt, this type of attire is recommended for

anyone recreating in an area that is open for hunting during hunting season. *See Staying*

*Safe During Hunting Season*, WASH. TRAILS ASS'N, https://www.wta.org/go-

outside/seasonal-hikes/fall-destinations/staying-safe-during-hunting-season

[https://perma.cc/7DFW-UVHB] (recommending that hikers "[w]ear bright clothing"

and "[c]hoose colors that stand out, like pink, red and orange").

The State points to our decision in *Schlegel* to support its claim that Mr. Miller

reasonably appeared to be engaged in hunting activities. In *Schlegel*, a majority of this

court held that DFW officers had sufficient "articulable facts" to perform a vehicle stop

under RCW 77.15.080 based on circumstances similar to the ones here. *See* 137 Wn. App. at 370. Mr. Schlegel was driving a truck on a dirt road in a wildlife area on the opening day of elk hunting season while wearing warm clothing. *Id.* at 367. According to DFW officers, these circumstances were consistent with hunting. *Id*. at 370. Our court deferred to the officers' characterization and held there was a "substantial possibility" that Mr. Schlegel was engaged in hunting activities when he was stopped. *Id*.

Were we bound by *Schlegel*, we would agree with the State that the stop was justified under RCW 77.15.080. But stare decisis does not exist "between or among the divisions of the Court of Appeals." *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 148-49, 410 P.3d 1133 (2018). We ordinarily strive to follow our prior decisions because we value consistency, and we must give our prior decisions "respectful consideration." *Id*. at 154; *see id.* at 150-51. However, if we conclude one of our prior opinions was incorrect, we are free to depart from it. *See Grisby v. Herzog*, 190 Wn. App. 786, 810-11, 362 P.3d 763 (2015).

The decision in *Schlegel* was not unanimous. A detailed dissent reasoned that the authority to "'temporarily stop [a] person'" under RCW 77.15.080 "does not extend to stopping a motor vehicle." *Schlegel*, 137 Wn. App. at 373 (Schultheis, J., dissenting). This is because "[t]raveling in a motor vehicle is not, nor can it be, engaging in hunting

9

activities." *Id*. at 373-74. Should an effort to kill or injure game take place from inside a moving vehicle, "it constitutes a crime."[3] *Id.* at 374; *see* RCW 77.15.460(1), (2)(b); *see also* WAC 220-413-070(2), (3).

As recognized by the dissent in *Schlegel*, the legislature has adopted specific provisions pertaining to the search and seizure of vehicles by DFW officers. *See* 137 Wn. App. at 374-75 (Schultheis, J., dissenting). For instance, RCW 77.15.094 allows officers to perform warrantless searches of "vehicles" based on reasonable suspicion that a vehicle contains evidence of a hunting and fishing violation. And RCW 77.12.620 allows DFW officers to conduct vehicle inspections at clearly marked "check stations." The fact that two statutes specifically reference vehicle inspections, but RCW 77.15.080 does not, indicates the legislature's intent that RCW 77.15.080 does not ordinarily extend to vehicle stops. When the legislature intends to authorize vehicle stops by DFW officers, it has shown that it knows how to do so. *Cf. Bassett v. Dep't of Ecology*, 8 Wn. App. 2d 284, 305, 438 P.3d 563 (2019).

---

[3] Because hunting from a moving vehicle is a crime, a DFW officer who actually witnesses someone hunting from a moving vehicle could arrest that person without recourse to RCW 77.15.080. *See* RCW 10.31.100 (authorizing warrantless arrests for misdemeanors if the officer witnesses the crime).

We find the dissent's interpretation of RCW 77.15.080 in *Schlegel* more persuasive than that set forth in the majority opinion. Therefore, we respectfully decline to follow the holding in *Schlegel*.[4]

The *Schlegel* dissent makes a persuasive case for concluding that RCW 77.15.080 never authorizes the stop of a moving vehicle. But we need not go that far to resolve Mr. Miller's appeal. Even if RCW 77.15.080 might *sometimes* justify stopping a moving vehicle based on a substantial possibility that an occupant is presently engaged in hunting activities, the facts here do not meet the requisite standard. The record here shows the only activity engaged in by Mr. Miller at the time he encountered the DFW officers was operation of his SUV. There was no indication to the officers that Mr. Miller was presently making an effort to kill, harvest, or capture a wild animal or bird. Merely driving a vehicle is inconsistent with the act of hunting. Thus, the stop was not justified under RCW 77.15.080.

---

[4] To be clear, we may not "overrule" one of our prior decisions; only the Supreme Court may resolve conflicts between panels of this court. *See Grisby*, 190 Wn. App. at 808-09; *Arnold*, 190 Wn.2d at 150. Should some future trial court confront an issue where our opinion today "irreconcilabl[y] conflict[s]" with *Schlegel*, that court should "predict what the Washington Supreme Court is likely to do." Mark DeForrest, *In the Groove or in a Rut? Resolving Conflicts Between the Divisions of the Washington State Court of Appeals at the Trial Court Level*, 48 GONZ. L. REV. 455, 511 (2012/13); *see, e.g.*, *Union Bank, N.A. v. Vanderhoek Assocs., LLC*, 191 Wn. App. 836, 848, 365 P.3d 223 (2015) (adopting Professor DeForrest's approach).

Because law enforcement stopped Mr. Miller's vehicle without legal justification, he is entitled to a favorable ruling on his suppression motion. We need not reach Mr. Miller's constitutional claims.

CONCLUSION

Mr. Miller's conviction is reversed. This matter is remanded with instructions to grant Mr. Miller's motion to suppress. *See State v. Walker*, 129 Wn. App. 572, 575, 119 P.3d 399 (2005) (noting, where an "initial stop" was unlawful, evidence discovered through the stop must be excluded as "fruits of the poisonous tree").[5]

_____
Pennell, J.

WE CONCUR:

_____                    _____
Fearing, C.J.                                        Lawrence-Berrey, J.

---

[5] We note that the district court and superior court did not err. Unlike the Court of Appeals, district and superior courts are bound to follow published decisions from the Court of Appeals. *See Marley v. Dep't of Lab. & Indus.*, 72 Wn. App. 326, 330, 864 P.2d 960 (1993), *aff'd*, 125 Wn.2d 533, 886 P.3d 189 (1994). Until today, there was no Washington decision disagreeing with *Schlegel*. The district court and superior court were required to follow *Schlegel* and, under *Schlegel*, Mr. Miller was not entitled to suppression.